Laura M. Sayles, App't *vs.* Varnum Steere, Admr.

MARCH 1, 1915.

Present: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

**(1)** *Probate Law. Sale of Real Estate.*

To warrant the entry of a decree to authorize an administrator to sell the real estate of intestate, he should establish by a preponderance of the evidence that the personal estate was insufficient to pay the debts of the deceased, his funeral expenses and charges of administration, and further either that it was necessary to sell all of the real estate described in the decree or that the real estate or some part thereof would be greatly injured if a sale of only a part thereof should be ordered.

**(2)** *Probate Law. Sale of Real Estate.*

On a petition of an administrator to sell the one-eighth interest in the real estate of intestate, it appeared that the only debts remaining unpaid were two notes secured by mortgages; funeral expenses of $198.50, and charges of administration of $804.40, and his own charges and the charges of an attorney, for which no bills had been rendered.

The total amount of the inventory of the goods and chattels was $1,754.67. This consisted of an one-eighth interest in second-hand machinery. This interest, together with the real estate, was subject to the lien of two mortgages for an amount in excess of the value of the chattels.

It appeared in evidence that the one-eighth interest of deceased in the real estate, was largely in excess of the amount due on the mortgages, and that the mortgagees did not require a lien upon the chattels for their security.

*Held,* that the administrator should first have attempted to have the interest of the intestate in the chattels released from the lien of the mortgages.

*Held,* further, that the estate presented a case where the insufficiency of the personal estate to pay the charges must be proved before resort should be had to the real estate.

*Held,* further, that no evidence was offered as to the value of the whole or either of the parcels of the real estate, or as to the relation of the four parcels to each other, or in what way the sale of an one-eighth interest in less than all the land would greatly injure the whole estate or any part thereof, and that until this appeared a decree authorizing the sale of all the real estate should not be entered.

PROBATE APPEAL. Heard on exception of appellant to decision of Superior Court affirming decree of probate court, and exception sustained.

SWEETLAND, J. This case is before us upon the appellant's exception to the decision of the Superior Court affirming a decree of the probate court of Burrillville; said decree authorized the appellee, as administrator *de bonis non* of the estate of Elliot S. Sayles, late of Burrillville, deceased, to sell all the right, title and interest which said Elliot S. Sayles had at the time of his death in four certain parcels of real estate described in said decree. Said decree was entered upon the petition of the appellee, administrator. (1) To warrant the decision of the Superior Court the administrator should have established by a preponderance of the evidence that the personal estate is insufficient to pay the debts of the deceased, his funeral expenses and charges of administration, and further, either that it was necessary to sell all of said real estate described in said decree or that said real estate or some part thereof would be greatly injured if a sale of only a part thereof should be ordered.

It does not appear that there are any of the debts of the deceased which remain unpaid save two notes secured by mortgages. The administrator presented evidence before the Superior Court of funeral expenses, unpaid, amounting to $198.50, and of charges of administration, amounting to $804.40, in all amounting to the sum of $1,002.90; and further testified that there existed claims against the estate for the services of an attorney and for his own services as administrator; but that no bills had yet been rendered upon either of said two latter claims. The administrator filed in the probate court an original inventory of the goods, chattels, rights and credits of the deceased, showing "cash due at death, $421.57; interest on same, $109.67," a total of $531.24; and also an one-eighth interest of the deceased in certain chattels. Said interest was appraised at $1,567.81. Later said administrator filed a supplementary inventory

showing an one-eighth interest of the deceased in other chattels which interest was appraised at $186.86; the total of the two inventories being $2,285.91. The administrator testified that since filing said inventories he has learned that the items of cash and interest amounting to $531.24 appearing in the original inventory are erroneous and that such sum is not due the estate. If this be true the correct total of the inventories is $1,754.67. The chattels which are the subject of the inventory are pieces of machinery which are second-hand and worn, but nothing appears in evidence which justifies us in assuming that the value of the interest of the estate therein has been overestimated in the inventory. The availability of this interest towards the payment of funeral expenses and administration charges is affected by the fact that said one-eighth interest in these chattels, together with the real estate, is subject to the lien of two mortgages for an amount largely in excess of the value of said chattels. All of said chattels and all of the real estate described in said decree are covered by each mortgage. The administrator however has made no attempt, as we (2) think he should have done, with what appears to us to be a good prospect of success, to have the interest in said chattels released from the lien of said mortgages. The interest of Elliot S. Sayles in said real estate was an undivided one-eighth interest in certain mill property and appurtenances, the other seven-eighths interest belonged and still belongs to his cousins, A. H. Sayles, F. L. Sayles and Mrs. Jenks, who also own the seven-eighths interest in said chattels named in the inventory. The interest of Elliot in said real and personal property was subject to the said two mortgages given by Elliot in his lifetime. It is not clear from the transcript of evidence to whom these mortgages were given, but we gather from the testimony that they were given by said Elliot to his brother, Albert L. Sayles, now deceased, the father of A. H. and F. L. Sayles and Mrs. Jenks, and that said mortgages are now owned by them. Said mortgages were each for over $8,000, or a total of $17,323.11. The

interest of Elliot in said real and personal property was leased to said Albert L. Sayles in his lifetime and after his death to said A. H. and F. L. Sayles and Mrs. Jenks. The rental at the time of the death of Elliot was $180.21 per month. In accordance with a written agreement said rent, above any advances by the mortgagees to Elliot, was to be applied in reduction of the interest and principal of said mortgages. Since the death of Elliot the holders of the two mortgages have continued to use said real and personal property, and have continued to apply the sum of $180.21 towards the payment of the interest and the reduction of the principal of said mortgages. On December 15th, 1913, one of the mortgages had been reduced to $6,128.55, and the other to $2,823.59, making the total amount due at that date upon both mortgages $8,962.14. We assume that the amount due has been further reduced since that date. If the fair rental of the one-eighth interest in said real and personal estate is $180.21 per month, or $2,162.52 per year, and the value of said interest in the personal estate is only $1,754.67, as set out in the inventory, then it is apparent that the one-eighth interest in said real estate is of considerable value, in excess of the original face of said mortgages and very largely in excess of the amount now due upon them, and that said mortgagees no longer require a lien upon the one-eighth interest in the chattels for their abundant security. In these circumstances we should be unwilling to believe, until the contrary was shown, that the mortgagees, as reasonable and fair minded persons, would refuse to exonerate said personal property from the lien of their mortgages in order that the same might be converted into money for the payment of funeral expenses and the charges of administration. Further, it is probable that the mortgagees as owners of the other seven-eighths interest in said chattels would either purchase said one-eighth interest at a fair price from the administrator acting under the direction of the probate court or would permit the entire chattels to be sold, so that the personal property of this estate could be

made available in the settlement of said estate. Administrators are required to act with reasonable diligence and ordinary good judgment for the protection of the estate and the rights of those interested therein. In this estate there is no conflict of interest between heirs and distributees which would interfere with such a course of action as we have suggested. It was stated by one of the appellant's witnesses that mill property was usually sold at a sacrifice; this is more likely to be the case if the attempt should be made to sell at public auction an undivided one-eighth interest in such property. In our opinion, in the circumstances of this estate, it would be improper and unjust to the heirs to attempt to sell this large interest in real estate for the purpose of satisfying the comparatively small amount of indebtedness, before all reasonable efforts have been exhausted to use the personal property for that purpose. Absolutely no efforts appear to have been made by the administrator looking to that end. It appears to us that this estate presents a case in which it is necessary to exhaust the personal estate, to prove its insufficiency to pay funeral expenses and administration charges, before resort should be had to the sale of the real estate. *Wood* v. *Hammond*, 16 R. I. 98, at 108.

It cannot be urged, with reason, that the administrator should be authorized to sell the real estate for the purpose of discharging the mortgage indebtedness. No one interested is pressing him to obtain such authority. These mortgages are being taken care of. The mortgagees in accordance with a written agreement, as they claim, are using the mortgaged property upon a rental and are applying the rent to the reduction of the mortgage indebtedness. The mortgagees appear to be willing to accept such method of payment, even if they are not bound to do so under said agreement.

Further, it does not appear from the evidence that if it should be found necessary to sell real estate, all should be sold. No evidence was before the court as to the value of the whole or either of the parcels of real estate. No evidence

was offered as to the relation of the four parcels to each other; nor was it shown in what way the sale of an one-eighth interest in less than all the land would greatly injure the whole estate or any part thereof. Until this appears a decree authorizing the sale of all the real estate should not be entered.

In our opinion the evidence did not warrant the decision of the Superior Court. The appellee may appear on March 8th, 1915, to show cause, if any he has, why said case should not be remitted to the Superior Court with direction to enter its decree reversing said decree of the probate court of Burrillville, and for further proceedings.

*Frank L. Hanley,* for appellant.
*Tillinghast & Collins,* for appellee.
*Zechariah Chafee, Jr.,* of counsel.